```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
LUCIA A. MORALES,                                            :
                                                             :
                                Plaintiff,                   :     No. 22-CV-8700 (OTW)
                                                             :
                -against-                                    :     **OPINION & ORDER**
                                                             :
LOCAL 32BJ, et al.                                           :
                                                             :
                                Defendants.                  :
                                                             :
                                                             :
-------------------------------------------------------------x
```

**ONA T. WANG, United States Magistrate Judge:**

I.  **INTRODUCTION**

Plaintiff Lucia A. Morales, proceeding *pro se*, alleges that she was suspended, laid off, and ultimately terminated by her employer, Defendant ABM, after ABM's tenant, Defendant Brookfield Properties ("Brookfield") demanded that she be removed from the workplace. Plaintiff's Union, the SEIU 32BJ (the "Union"), grieved these actions through arbitration (the "Arbitration"). The arbitrator decided, on July 12, 2022, that Plaintiff was terminated for just cause. Read broadly, Plaintiff claims that she was subject to harassment and abuse from her employer and from coworkers of Colombian nationality, unjustly laid off, and that the Union represented her in bad faith, which led to the arbitration award upholding her termination. Plaintiff's Complaint ("Complaint") (ECF 2).

Plaintiff seeks "the best remedy necessary to compensate for" her experience working at 200 Liberty. *Id.* at 12.

II.  **FACTUAL BACKGROUND**[1]

Plaintiff has been a member of the Union since 1998. Complaint at 8.[2] After working at different locations in New York City, all for ABM, she began working at 200 Liberty Street as a cleaner at some time after 2010. *Id.* She "never had any problems in this building until 2017" when Gina Otero, an ABM employee, was brought to work at the building as project manager. *Id.* According to Plaintiff, Otero promoted and hired and fired different individuals (which Plaintiff believed was in violation of Union rules and regulations), and began a "romantic relationship" with the building manager around October 2018. *Id.*

Also around October 2018, Plaintiff was elected Shop Steward for the building, "and from the same day I was assigned that position the harassment against me began since [Otero] did not want me to be the Shop Steward. *Id*. A prior case relating to this alleged harassment "was ruled on [in] my favor because of the Union's help." *Id*.

Otero then apparently threatened Plaintiff with suspension around December 2019, perhaps in relation to a fight involving two coworkers which Plaintiff reported to the Union and HR of ABM. Complaint at 8-9. Plaintiff suggests that the instigator of the fight, alleged to be of Colombian nationality, was not reprimanded because the supervisor and Otero are also Colombian. Complaint at 9. Plaintiff notes at least two other incidents in 2019 where she was suspended without pay, after which the Union interceded on her behalf and reversed the suspensions. *Id*.

---

[1] For purposes of deciding the Motion, the Court accepts as true all facts alleged by Plaintiff, *see Krassner v. 2nd Ave Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), and draws all inferences in the Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).

[2] Plaintiff's complaint is filed as a handwritten *pro se* form complaint with an attachment containing numbered paragraphs. For ease of reference, when referring to Plaintiff's Complaint, I will use the ECF page numbers.

In July 2020, Plaintiff was given a 5-day suspension for failing to properly wear her mask; at a subsequent arbitration, this suspension was reduced to 3 days. *Id.* Plaintiff asserts that other employees did not always wear their masks and were not disciplined; she states, "[a]ll the harassment and abuse against me was because I was the shop union steward in the building." *Id*.

### 1. The Cake Knife Incident Leads to a Layoff.

On the Wednesday before Thanksgiving (2020), Plaintiff went to clean "the Building Manager's [Edelman's] office" and other spaces on the third floor. Complaint at 9-10. Among other items in the conference room or pantry area, Plaintiff picked up a cake knife that she brought to the 37th floor to wash; she planned to wash the knife on the 37th floor, clean the 37th floor, and then return the knife to the third floor. Complaint at 10. Edelman apparently called the foreman, because the foreman asked Plaintiff for the knife, took it, washed it, and returned it to Edelman. *Id.*

It does not appear that Plaintiff returned to work after the Thanksgiving holiday. Plaintiff's supervisor called her at home[3] and told her not to return to work, and that HR had opened an investigation into the incident with the knife. *Id.* During this time, Plaintiff also called Otero pleading to return to work, to no avail. *Id.*

In December, ABM's HR manager spoke to Plaintiff about the knife incident and Plaintiff reported that personal stressors led her to feel that "anyone would jump out of a bridge." *Id.*. The HR manager "asked me if I needed a psychiatrist help and I told her I did not." *Id*.

---

[3] Plaintiff's complaint states "May 30" but by the description of events and this paragraph's location in the complaint, these conversations must have happened between November 27, 2020 and December 9, 2020. They cannot have happened in either May 2020 or 2021 as one predates the cake knife incident, and one takes place after Plaintiff's termination. *See* Complaint at 10.

Days after that conversation, Plaintiff received a layoff notice "due to the COVID pandemic not to exceed six months," beginning November 30, 2020. *Id.* Plaintiff asserts that many coworkers with less seniority were not laid off. *Id.*

On January 21, 2021, Plaintiff called Otero:

> to ask her if it was fair for me to be out of work while there were many employees with less building seniority than me working at the building. I also asked her if she knew what had happened at the Capitol in Washington and that the same noise would happen at 200 Liberty when I contact Brookfield Management to tell them all the bad things she was doing in the building and that she should be careful with the new Colombian employees that she put to work in the building because they were the ones showing that she was stealing money from the company to pay them even if they did not work.

*Id*.

### 2. *The Union takes Plaintiff's Case to Arbitration*

Plaintiff filed several grievances relating to her suspensions, layoff, and termination, two of which were taken to arbitration beginning November 5, 2021. Complaint at 11. *See also* Arbitration Opinion and Award (ECF 35-1) (recounting hearing dates). Plaintiff's Complaint complains about the delays in the Arbitration, the time it took for the arbitrator to issue his Opinion and Award, and that the Union "did not indict the building manager [Edelman] to be in the arbitration because he was the one who falsely accused" Plaintiff of stealing the knife. Complaint at 11.

The Arbitrator issued his Opinion and Award on July 12, 2022 (ECF 35-1), finding that Plaintiff's five-day suspension for not wearing her mask should be shortened to three days, and finding that ABM had just cause to terminate Plaintiff after her remarks following the cake knife incident.

4

### 3. *Plaintiff's Other Allegations*[4]

While awaiting her arbitration, Plaintiff was elected to an Assistant District Leader position in September 2021. (ECF 56 at 9). She also volunteered to support a candidate for president of the Union who ultimately was not elected. *Id.* at 9-10. After the new Union president took office, he introduced Plaintiff to her attorney for the Arbitration. *Id.* at 10 Although not entirely clear, Plaintiff's allegation seems to be that Plaintiff's attorney at the Arbitration did not effectively represent her, and that this was done in "bad faith" because Plaintiff had previously supported the Union president's adversary. *See* ECF 56 at 10; Complaint at 11 (accusing Union of acting in "BAD FAITH").

Plaintiff claims that her attorney failed to cross examine some witnesses; did not present any witnesses on her behalf; failed to challenge other witnesses' testimony; and did not follow Plaintiff's instructions to allow her (Plaintiff) "the chance to explain" the remarks that led to her termination. *See, e.g.*, ECF 56 at 11.

### III. PROCEDURAL HISTORY

The Arbitration Opinion and Award issued on July 12, 2022, and Plaintiff filed her Complaint on October 11, 2022. ABM and Brookfield filed one motion to dismiss, at ECF 31, and the Union filed their motion to dismiss at ECF 34. Plaintiff did not file an EEOC claim of discrimination against her employer, but appears to allege a hybrid claim – at best, that her employer engaged in harassing and abusive behavior, fabricated reasons to suspend and terminate her, and ultimately terminated her. Although not clear, Plaintiff appears to allege, for

---

[4] Plaintiff's opposition briefs, ECF 55, 56, drafted with the assistance of NYLAG, interpose additional facts that she requests to be considered with her Complaint. I include them here.

5

example, that other co-workers did not receive discipline for failing to wear their masks. Last November, Plaintiff attempted to supplement her Complaint to add new "evidence" that other Union members were not terminated or suspended for activities far worse than those addressed at Plaintiff's Arbitration. (ECF 72). Not surprisingly, Defendants opposed this request. (ECF 73, 74).[5]

## IV.  DISCUSSION

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). More specifically, the plaintiff must allege enough facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)*.* For a claim to sufficiently "raise a right to relief above the speculative level," it must be grounded on factual allegations. *Twombly*, 550 U.S. at 555. A claim grounded on mere suspicion is not enough to meet this standard. *Id*. "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555, 557) (internal citation omitted, alteration in original).

As relevant here, a court is "obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Therefore, this Court must

---

[5] The parties consented to my jurisdiction on April 6, 2023. (ECF 44).

interpret Plaintiff's submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal citations omitted). "However, the liberal treatment afforded to *pro se* litigants does not excuse a *pro se* party 'from compliance with relevant rules of procedural and substantive law.' " *Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (quoting *Maisonet v. Metro Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009)). Accordingly, the Court may not "invent factual allegations that a plaintiff has not pled." *Daly v. Westchester Cty. Bd. of Legislators*, No. 19-CV-4642 (PMH), 2021 WL 229672, at *4 (S.D.N.Y. Jan. 22, 2021) (alterations and quotations omitted) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). As mentioned, however, the Court may consider facts raised in opposition papers, depending on the circumstances.[6] *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018).

In reaching its conclusions, the Court is aware that issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss, and the Court has not considered them here. *Hughes v. Ester Co.*, 930 F.Supp. 2d 439, 461–62 (E.D.N.Y. 2013)

---

[6] Here, *pro se* Plaintiff has received assistance from the NYLAG Legal Clinic which is a free legal clinic that assists pro se litigants in the Southern District of New York. *See* ECF 8 at 7. Defendants assert that this assistance should disqualify Plaintiff from receiving the "special solicitude" normally afforded to *pro se* Plaintiffs. I need not reach this issue now (although I question how depriving a Plaintiff of the special solicitude in any way advances the goals of finality and adjudication on the merits), because even considering the facts raised in Plaintiff's opposition papers, I find that Defendants' motions to dismiss should be granted.

("[I]ssues concerning the weight that should be given to this study cannot be resolved on a motion to dismiss. . . .").

### 1. Breach of Duty of Fair Representation

Plaintiff brings a "hybrid" claim against the Union and ABM for violations of § 301 of the Labor Management Relations Act ("LMRA"); 29 U.S.C. § 185; Sections 8(a)(3) and 8(a)(1) of the National Labor Relations Act ("NLRA"); and for the Unions breach of the duty of fair representation. Liberally construed, Plaintiff alleges that ABM, her employer, and Brookfield, the tenant/employer's client, violated the CBA when ABM wrongfully terminated her, and that the Union breached its duty of fair representation when it provided ineffective representation during the Arbitration. (ECF 55 at 21).

The duty of fair representation arises out of a union's status as the exclusive bargaining agent with the employer. *See Greco v. Commc'ns Workers of Am., Loc.,* 1104, 824 F.Supp.2d 351, 356 (E.D.N.Y. 2011). Accordingly, the duty requires a labor organization "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 44 (1998) (internal quotation marks omitted).

It is well established that an employee can sue their employer for breach of a CBA. *Smith v. Evening News Ass'n*, 371 U.S. 195 (1962). Usually, an employee must exhaust any grievance or arbitration process set forth in the CBA before bringing suit. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). In *DelCostello v. International Brotherhood of Teamsters*, however, the Supreme Court recognized that such an exhaustion requirement may result in an "unacceptable injustice" when the union representing the employee in these processes acts in

"a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello*, 462 U.S. at 164. In such a case, an employee can sue both the employer and the union, regardless of the grievance or arbitration proceeding. *Id.* In doing so, the plaintiff must allege that the union has breached its duty of fair representation and that the employer has breached its CBA. *Id.* A plaintiff has six months from the time he "knew or should have known of the breach of the duty of fair representation" to bring suit. *See White v. White Rose Food a Div. of DiGiorgio Corp.,* 128 F.3d 110, 114 (2d Cir. 1997).

Breach of duty of fair representation is difficult to plead because "[a] wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents," subject to good faith and honesty in exercising its discretion. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953). A plaintiff's "obligation to plead sufficient conduct to support an unfair representation claim has been characterized as an enormous burden." *Dennis v. Local 804*, No. 07-CV-9754 (HB), 2009 WL 1473484, at *5 (S.D.N.Y. May 27, 2009) (cleaned up). The plaintiff must show that his union's actions or inactions were either arbitrary, discriminatory, or in bad faith, *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010), and those actions (or inactions) have a "causal connection" to his injuries. *White*, 237 F.3d at 178 (citing *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1988)).

A union's actions are "arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (citations omitted). "This 'wide range or reasonableness' gives the union room to make

discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45–46 (1998)

A breach of this duty occurs only if a union's conduct toward a member of the collective bargaining unit is "shown to have arbitrarily, discriminatorily, or in bad faith foreclosed the employee's opportunities to vindicate such wrong through the grievance process." *Castro v. New York City Bd. of Educ.*, 777 F. Supp. 1113, 1118-19 (S.D.N.Y. 1990), *aff'd*, 923 F.2d 844 (2d Cir. 1990). "[M]ere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation." *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372–73 (1990).

Once a plaintiff has established that her union acted arbitrarily, discriminatorily, or in bad faith, she must "demonstrate a causal connection between the union's wrongful conduct and [her] injuries." *Vaughn*, 604 F.3d at 709 (internal quotation marks omitted); *see Fleischer*, 2021 WL 5365581, at *2. When the conduct involves an arbitration proceeding, the plaintiff must show that the union's conduct "seriously undermine[d] the arbitral process." *Barr v. United Parcel Service, Inc.*, 868 F.2d 36, 43 (2d Cir. 1989) (internal quotation marks omitted); *see Fleischer*, 2021 WL 5365581, at *2. The plaintiff must show more than a possible change in the outcome of the arbitration; she must show that the unsuccessful result was due to her union's wrongful conduct. *Morris v. United Parcel Service*, No. 98-CV-7353 (KMW) (RLE), 2001 WL 705852, at *5 (S.D.N.Y. June 13, 2001), *subsequently aff'd sub nom. Morris v. United Parcel Serv., Inc.*, 63 F. App'x 50 (2d Cir. 2003); *Mullen v. Bevona*, No. 95-CV-5838 (PKL), 1999 WL 974023, at *6 (S.D.N.Y. Oct. 26, 1999).

"Any substantive examination of a union's performance . . . must be highly deferential," *O'Neill*, 499 U.S. at 78, since a union has "broad discretion in its decision whether and how to pursue an employee's grievance against an employer." *Chauffeurs Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 567–68 (1990) (citing *Vaca v. Sipes*, 386 U.S. 171, 185 (1967)). A union does not breach its duty of fair representation when it fails to process a meritless grievance, fails to process a grievance due to error in evaluating its merits, *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1153–54 (2d Cir. 1994), engages in mere negligent conduct or errors in judgment, *Barr*, 868 F.2d at 43–44, makes tactical errors, *Id.* at 43, or decides not to arbitrate a grievance. *Vaca*, 386 U.S. at 191–92. Although "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, union members do not have an absolute right to have their grievances taken to arbitration." *Spellacy*, 156 F.3d at 128 (internal quotation marks and alterations omitted). "The same logic applies, with even greater force, to an arbitration appeal." *Fleischer v. Barnard College*, No. 19-CV-10738 (RA), 2020 WL 7360251, at *6 (S.D.N.Y. Dec. 15, 2020).

As an initial matter, Plaintiff's breach of duty of fair representation claim(s) are not likely time-barred. Read liberally, Plaintiff's claims against the Union center on the Union's loss at arbitration when it challenged her termination; specifically, Plaintiff claims that the Union failed to present various claims or witnesses, and that these failures led the arbitrator to decide that she had been terminated for just cause. It is conceivable that Plaintiff did not contemplate that she would lose the arbitration until she actually lost, on July 12, 2022, and she sued within six months, filing her complaint on October 11, 2022.

But Plaintiff has not pointed to any actions or omissions by the Union during the arbitration that could be characterized as anything but strategic and an exercise of its broad discretion. *See Naprstek v. Marriott International*, No. 21-CV-8560 (CM), 2024 WL 113804 at *10, (S.D.N.Y. Jan. 10, 2024). Notwithstanding a litany of actions Plaintiff believes the Union should have taken at arbitration (*see* ECF 56 at 9-14), Plaintiff has not alleged that the failure to take those actions was arbitrary, discriminatory or in bad faith. Nor has Plaintiff pleaded that the actions caused the negative outcome. At best, she proffers subjective reasons, formed in hindsight, to explain why she lost: her "perception that her interests were ineffectively represented was confirmed when she read the award," and that "[a]fter reading the award, Morales believes she was misunderstood due to language barriers and not having a translator or that this was another example of Ochs [her attorney] failing to correct misstatements by ABM and their witnesses." (ECF 56 at 14-15). This is insufficient to plead that Plaintiff's "unsuccessful result [at arbitration] was *due to* [her] union's wrongful conduct," *Naprstek*, 2024 WL 113804 at *9 (emphasis added), or even that such conduct was *wrongful*. *See also Johnson v. National Football League Players' Association*, No. 17-CV-5131 (RJS), 2018 WL 8188558 at * 14-15. (S.D.N.Y. Oct. 3, 2018) (denying vacatur of arbitral award, noting that federal courts must defer to arbitrator's award).

### 2. Breach of Collective Bargaining Agreement[7]

"A federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential – indeed, among the most deferential in the law." *Nat'l Football League Mgmt.*

---

[7] As discussed previously, hybrid claims against employers and unions have two elements: first, that the employer breached a collective bargaining agreement; and second, that the union breached its duty of fair representation in redressing a grievance against the employer. "Importantly, proof of the union's breach is a prerequisite to consideration of the merits of plaintiff's claim against the employer." *Perkins v. 199 SEIU United Healthcare*

12

*Council v. Nat'l Football League Players Ass'n (Brady),* 820 F.3d 527, 532 (2d Cir. 2016) ("Our role is not to determine for ourselves whether Brady participated in a scheme to deflate footballs or whether the suspension imposed by the Commissioner should have been for three games or five games or none at all. Nor is it our role to second-guess the arbitrator's procedural rulings. Our obligation is limited to determining whether the arbitration proceedings and award met the minimum legal standards established by the Labor Management Relations Act.")

Plaintiff asserts, essentially, that she was "harassed" by Otero and Adelman, (AMB and Brookfield employees, respectively) for a variety of reasons, including: that she learned that Otero and Adelman were engaged in an illicit relationship at work, for being elected to her Union position as Shop Steward, for filing numerous complaints against Otero on behalf of herself and other union members, for taking a "cake knife" with her from the 3rd to 36th floor, and for failing to wear a mask in July 2020. *See* ECF 55 at 5-7. For these incidents, Plaintiff received suspensions and other corrective actions, and she was ultimately terminated in March 2021. Plaintiff filed several grievances for these suspensions and corrective actions, culminating in an arbitration in which the arbitrator ultimately determined that Plaintiff had been terminated for just cause.

Applying such deference here, it is not the Court's role to now question whether the arbitrator should have focused more on the "cake knife" incident to address whether the suspension was error, any more than we should consider the grievance process for other employees at other locations. *See* ECF 72. It is undisputed that here, Plaintiff engaged in

---

*Workers East*, 73 F. Supp. 3d 278, 288 (S.D.N.Y. 2014) (cleaned up). Here, Plaintiff cannot plead, as a matter of law, that the union breached its duty of fair representation when the arbitrator determined that there was just cause to terminate Plaintiff in 2021. This alone is reason to dismiss the Amended Complaint in its entirety.

protected activity on her own behalf and in her capacity as Shop Steward, complaining about Otero and others at 200 Liberty. It is also undisputed that Otero and Plaintiff did not have a peaceable relationship and clashed many times. Plaintiff has not pleaded, however, that those activities caused Plaintiff's termination. Indeed, Plaintiff admits that she made certain statements that ultimately were found by the arbitrator to support her termination, such as threatening to jump off a bridge when discussing the suspension arising from the cake knife incident, ECF 35-1 at 14; ECF 56 at 7[8], and referencing the January 6 Capitol insurrection to Otero, on January 21, 2021. While Plaintiff asserts she was "trying to be helpful," ECF 56 at 8, Otero testified at the arbitration that Plaintiff's statements about January 6 were more threatening: "Do you know what happened in the Capitol? Well, it is going to happen in Brookfield because I know a lot of people." (ECF 35-1 at 13). The arbitrator explained the reasoning behind his decision and his credibility determinations in upholding her termination. There is no basis for vacating the arbitrator's award.

## V.   CONCLUSION

For the reasons stated above, Defendants' motions to dismiss (ECF Nos. 31 and 34) are **GRANTED**. Although *pro se* complaints should generally be given leave to amend when there is "any indication that a valid claim might be stated," *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002), amendment may be denied upon a finding of futility. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271–72 (2d Cir. 1996). Here, Plaintiff has not pleaded either element of her hybrid claim, and has pleaded facts that would make it impossible for her to do so.

---

[8] Here, Plaintiff also acknowledges that she told Union delegate, Otero and others that "the day I became Shop Steward was a death sentence." *Id*.

Defendants are directed to serve a copy of this Opinion on Plaintiff by mail and file proof of service on the docket within seven days.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

_s/ Ona T. Wang_

Dated: March 25, 2024
New York, New York

**Ona T. Wang**
United States Magistrate Judge